**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**W. Thompson THORN, III,
Defendant–Appellee.**

**No. 91–4251.**

United States Court of Appeals,
Eleventh Circuit.

March 24, 1994.

John L. Newcomer, Asst. U.S. Atty., Karla Spaulding, Tamra Phipps, Paul Moriarty, Tampa, FL, for plaintiff-appellant.

Lee Fugate, Clearwater, FL, G. Richard Strafer, Quinon & Strafer, P.A., Miami, FL, for defendant-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and FRIEDMAN *, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge:

The sole issue in this case is whether the United States District Court for the Middle District of Florida correctly set aside a jury verdict convicting the appellee Thorn of making a material false statement to influence a federally-insured financial institution, in violation of 18 U.S.C. § 1014 (1988), and entering a judgment of acquittal of the charge. The alleged false statement was Thorn's failure to list, in an attachment to a title policy he provided to the financial institution that specified exceptions to the title guaranty, a prior real estate mortgage on the property that secured the loan the financial institution was making to Thorn and his associates. The district court held that Thorn's conduct did not violate the statute. We affirm.

## I

A. The pertinent facts relevant to the issue we decide are undisputed.

In December 1984 Thorn and former co-defendant Anderson, the founding members of a Florida law firm, obtained for ATGQ, a partnership the firm had established, a loan of one million dollars from Life Savings and Loan (Life) for the financing and construction of a new building for the law firm. The loan was to be secured by a mortgage on the property. At the time, the property was subject to four existing mortgages, including one held by Mr. and Mrs. Frank, from whom the law firm had purchased part of the property.

At the closing of the loan on December 28, 1984, Thorn represented both ATGQ (the borrower) and the company that was to provide title insurance (Attorneys Title Insurance Fund). It was understood and agreed that Life would have an "undiluted first lien" on the property. Three of the existing mortgages were satisfied at the time of the closing or with the proceeds of the loan. The

Frank mortgage for $350,000, however, was not satisfied until many months later. Life's representatives, including its attorney, closed the loan without receiving any proof that the Frank mortgage had been either satisfied or subordinated to the Life lien.

Thorn, as the representative of the title company, did not provide a title policy at the closing, but only a written commitment to supply such a policy. Thorn did not issue the policy until September 1985.

The policy insured Life against any losses it might suffer because of title defects, except for certain liens specified in Schedule B of the policy. The Frank mortgage, which was still outstanding when the title policy was delivered to Life, was not listed on the Schedule. An earlier draft of Schedule B had included the Frank mortgage, but Thorn had directed that that mortgage be deleted.

Life subsequently discovered that the Frank mortgage had not been released, and threatened to declare a default unless the matter were corrected within ten days. Thorn then obtained a loan from another savings and loan company, which was used to pay off both the Frank mortgage and the Life loan.

B. In 1991, a 15–count indictment was returned charging Thorn and Anderson with one count of conspiracy, ten counts of bank fraud, and four counts of making materially false statements to influence a federally-insured financial institution. In the first trial, the district court directed acquittal of both defendants on two of the four counts of filing false statements. The court declared a mistrial when the jury was unable to agree on the other counts.

In the second trial, the jury convicted Thorn on one of the false statement charges (Count 13), acquitted him on the remaining counts, and acquitted Anderson on all counts.

Prior to the verdict, both defendants moved for judgments of acquittal. The district court (Judge Tsouclas of the Court of International Trade, sitting by designation) reserved ruling on the motions until after the

* Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by    designation.

verdict. Following Thorn's conviction on Count 13, Thorn renewed his motion for acquittal.

The court granted the motion and set aside the jury's guilty verdict "as a matter of law". The court was highly critical of the conduct of Life's representatives in closing the loan without obtaining proof that the Frank mortgage had been released. In directing acquittal of Thorn on Count 13, the court stated:

There is no way that a crime was committed in this case that I can see.

## II

The conduct that 18 U.S.C. § 1014 makes criminal is

knowingly mak[ing] any false statement or report ... for the purpose of influencing in any way the action of ... any institution the accounts of which are [federally] insured ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise.

■ To establish a violation of this provision, the government "must demonstrate (1) that the defendant made a 'false statement or report,' and (2) that he did so 'for the purpose of influencing in any way the action of [a described financial institution] upon any application, advance, ... commitment, or loan.' " *Williams v. United States,* 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982).

■ The district court correctly vacated Thorn's conviction because the government did not demonstrate that Thorn made a "false statement or report" within the meaning of § 1014.

Count 13 of the indictment, on which Thorn was convicted, charged that on or about September 11, 1985, Thorn

did knowingly and willfully make a material false statement for the purpose of influencing the action of Life Savings and Loan Association, ... upon an application and loan in that the defendants represented to Life in an Attorneys Title Fund insurance

policy that the Frank mortgage had been released as a lien on Plant Avenue by intentionally failing to include reference to said policy to the Frank mortgage as an outstanding lien whereas, as the defendants then and there well knew, the Frank mortgage had not been released.

Count 13 also incorporated by reference Section D, Paragraphs (1)–(9) of Count 1, which set forth the overt acts in furtherance of the conspiracy. Paragraph (7), Section D of that count stated

On or about September 11, 1985, Thorn caused to be delivered to Life an Attorney's Title Insurance Fund title insurance policy issued by THORN as agent which policy insured the Life $1,000,000 loan to ATGQ as secured by Plant Avenue, and which policy contained no reference to the Frank mortgage as an outstanding lien on Plant Avenue.

The false statement the indictment charged thus was made in the title insurance policy that Thorn delivered to Life in September 1985. It consisted of "misrepresent[ing]" to Life "that the Frank mortgage had been released as a lien" on the property by intentionally failing to refer in the policy "to the Frank mortgage as an outstanding lien." In other words, the alleged false statement was the failure to disclose that the Frank mortgage was still outstanding and had not been released or subordinated.

Nothing in the title policy, however, made any statement about the Frank mortgage, or even referred to it. The title policy merely insured Life "SUBJECT TO ... THE EXCEPTIONS CONTAINED IN SCHEDULE B," "against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which The Fund may become obligated to pay hereunder, sustained or incurred by the insured by reason of:" eight events, including "6. The priority of any lien or encumbrance over the lien of the insured mortgage." The only effect of Thorn's failure to list the Frank mortgage in Schedule B was that the title insurance covered any loss Life might suffer as a result of the priority the Frank mortgage had over Life's lien because of Thorn's failure to carry out his commit-

ment to Life that the Frank mortgage would be released or subordinated.

In short, Thorn made no statement in the title policy regarding the Frank mortgage and did not falsely state that it had been released or was no longer a lien prior to that of Life. The policy was exactly what it purported to be and no more: it insured Life against any losses it might suffer as a result of any prior encumbrance on the mortgaged property, except for those specified in Schedule B. It made no representations or statements regarding the Frank mortgage, and the failure to list that mortgage on Schedule B did not constitute an implied statement that the Frank mortgage had been released or subordinated.

The government contends that in view of Thorn's prior statements to Life that the Frank mortgage would be released and the substantial time (eight months) that had elapsed since he made those statements, the failure to list the Frank mortgage in Schedule B as one of the prior encumbrances against which the policy did not insure constituted an implied representation that the Frank mortgage had been released. Thorn's failure to disclose the continued existence of the Frank mortgage when he delivered the title policy to Life might have constituted bank fraud. Indeed, as noted earlier, Thorn's failure to list the Frank mortgage in the title policy was charged as one of the overt acts in furtherance of the conspiracy to defraud Life. The failure also was charged in Count V as bank fraud. The jury, however, acquitted Thorn on both of those counts. For the reasons already given, the failure to list the Frank mortgage in the title insurance policy did not constitute the "mak[ing]" of a "false statement or report" under § 1014.

In *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), the Supreme Court rejected the government's theory that a false statement in violation of § 1014 may be implied from the circumstances in which a correct statement is made. In holding that a check kiting scheme did not violate § 1014, the Court rejected the government's contention that "a drawer is generally understood to represent that he 'currently has funds on deposit sufficient to cover

the face value of the check,' ... [i]f the drawer has insufficient funds in his account at the moment the check is presented, the Government continues, he effectively has made a 'false statement' to the recipient." *Id.* at 285–86, 102 S.Ct. at 3091–93. The Court pointed out:

Although petitioner deposited several checks that were not supported by sufficient funds, that course of conduct did not involve the making of a "false statement," for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as "true" or "false." Petitioner's bank checks served only to direct the drawee banks to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks dishonored the drafts. Each check did not, in terms, make any representation as to the state of petitioner's bank balance.

*Id.* at 284–85, 102 S.Ct. at 3091–92.

Similar reasoning supports our conclusion in the present case. The title policy merely stated what insurance was provided. It did not "make any representation as to the state of" the Frank mortgage.

Other courts of appeals have rejected the government's theory of implied false statements under similar false-statement statutes. In *United States v. Waechter*, 771 F.2d 974 (6th Cir.1985), for example, the court reversed Waechter's conviction for making false statements to the Department of Housing and Urban Development, in violation of 18 U.S.C. § 1010. The government "alleged that Waechter's practice of having employees submit multiple bids for a single property, in a manner that did not reveal that Waechter controlled all the bids, constituted false statements because Waechter intended to withdraw any bid except the lowest bid necessary to outbid his competitors and enable him to purchase a house." *Id.* at 975. The court rejected this view because there was "no evidence that Waechter's method of bidding involved making either express or implied statements to HUD that were false". *Id.* The court rejected the government's contention that the bids made "express false statements by omission," i.e., by failing to disclose

that most of the bids would be withdrawn. *Id.* at 979.

In sum, Thorn's failure to list the Frank mortgage in Appendix B of the title insurance policy as a prior lien against which the policy did not insure, did not constitute a false statement that the Frank mortgage had been released or subordinated and, therefore, Thorn made no "false statement or report" to Life, in violation of § 1014.

The order of the district court setting aside Thorn's conviction on Count 13, and acquitting him on that count is AFFIRMED.