# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1728

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Gilberto Salaiza Zuazo, | * |
| | * |
| Appellant. | * |

_____

Submitted:  October 20, 2000
Re-submitted:  March 2, 2001
Filed:  March 7, 2001

_____

Before WOLLMAN, Chief Judge, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Gilberto Salaiza Zuazo appeals from the order of the district court[1] denying his motion for a new trial following his convictions for conspiracy to distribute controlled substances and aiding and abetting distribution of methamphetamine and cocaine.  We affirm.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

## I.

On September 2, 1998, Salaiza Zuazo, a Mexican citizen, and Carlos Gomez Corro arrived in Minneapolis, Minnesota, in a Honda automobile with 5907.1 grams of cocaine and 436.8 grams of methamphetamine secreted in the gas tank, which had been modified in such a manner as to reduce its capacity and to render the gas gauge inoperative, necessitating stops every two or three hours to refuel. The two men had driven directly from Los Angeles, California, stopping only briefly at a rest area to sleep for a few hours. Upon arriving in the Minneapolis metropolitan area, Gomez Corro called Luis Andrade, whom the Minneapolis narcotics officers had under investigation as a possible drug dealer, and arranged for Salaiza Zuazo to deliver the car. A court-authorized wiretap on Andrade's phone intercepted and recorded the call. Salaiza Zuazo was arrested at the delivery point, and the drugs were ultimately discovered following a search of the car.

Eight individuals were indicted as a result of the investigation that led to Salaiza Zuazo's arrest. Six of these individuals, including Gomez Corro and Andrade, pled guilty, and the charges against one were dismissed. Salaiza Zuazo was indicted for conspiracy to distribute and to possess with intent to distribute controlled substances in violation of 21 U.S.C. sections 846 and 841(b)(1)(A), and for aiding and abetting the possession with intent to distribute cocaine and methamphetamine in violation of 21 U.S.C. sections 841(a)(1) and (b)(1) and 18 U.S.C. section 2.

Prior to Salaiza Zuazo's trial, Gomez Corro participated in two proffer sessions in conjunction with his plea. Although the government notified Salaiza Zuazo's counsel that it expected to have a cooperating co-conspirator, it neither revealed Gomez Corro's identity nor made his statements available. Andrade, the Minneapolis leader of the conspiracy, provided a letter to Salaiza Zuazo prior to his trial stating that he and Salaiza Zuazo had never met. Salaiza Zuazo's counsel attempted to interview

Gomez Corro and Andrade before Salaiza Zuazo's trial and in both cases was put off by their attorneys. Neither Gomez Corro nor Andrade was called as a witness at trial.

At trial, Salaiza Zuazo testified that he had not known that the car contained drugs and that he had accompanied Gomez Corro to Minneapolis in order to drive a van back to Los Angeles for $500. The government offered no direct evidence that Salaiza Zuazo knew there were drugs in the car, but argued that he could not have been an unknowing participant because (1) the modifications to the car had effects obvious to anyone who drove it; (2) usual drug smuggling tactics include having a courier aware of the location and quantity of drugs being delivered and the choice of Salaiza Zuazo to make final delivery of the car indicated that he was that courier; (3) an intercepted conversation between Gomez Corro and Andrade gave rise to the inference that Salaiza Zuazo was a willing co-conspirator; and (4) Salaiza Zuazo's story was not credible. The government introduced police testimony in support of its theory. Under the government's theory, Salaiza Zuazo's role in the conspiracy was to reveal the location and confirm the quantity of the drugs on arrival.

Salaiza Zuazo was convicted on both counts and sentenced to 120 months' imprisonment. At the sentencing hearing, his counsel learned of Gomez Corro's statements, which were largely consistent with Salaiza Zuazo's account. Salaiza Zuazo then filed a motion for a new trial.

## II.

Salaiza Zuazo contends that the district court erred in denying his motion for an evidentiary hearing and order compelling the government to produce Gomez Corro's proffer statements and for a new trial. He argues that the government was obligated to disclose Gomez Corro's statements prior to the trial under Brady v. Maryland, 373 U.S. 83 (1963), that its failure to do so entitles him to a new trial or to an evidentiary hearing to determine whether a new trial is warranted, and that even if there was no

<u>Brady</u> violation, Gomez Corro's statements constitute newly discovered evidence that entitles Salaiza Zuazo to a new trial.

## A. <u>Brady</u> Violation

We conclude that the government's conduct did not rise to the level of a <u>Brady</u> violation. The government does not suppress evidence in violation of <u>Brady</u> by failing to disclose evidence to which the defendant had access through other channels. <u>See</u> <u>United States v. Cheatham</u>, 899 F.2d 747,752-53 (8th Cir. 1990) (no <u>Brady</u> violation where defense counsel was aware of witness's existence and was not prevented from speaking with her). Similarly, when the government does not disclose a potential source of evidence but the evidence available from that source is cumulative of evidence already available to the defendant, it has committed no <u>Brady</u> violation. <u>See</u> <u>United States v. Quintanilla</u>, 25 F.3d 694, 699 (8th Cir. 1994) (no <u>Brady</u> violation where undisclosed evidence was merely cumulative).

Having spent two days together with him during the trip from California, Salaiza Zuazo was well aware of Gomez Corro and his potential testimony. There is no suggestion that the government made any attempt to restrict Salaiza Zuazo's access to Gomez Corro. Furthermore, although Salaiza Zuazo did not discover that Gomez Corro had made statements to the government until sentencing, the underlying facts comprising the relevant evidence contained in those statements were not unknown to Salaiza Zuazo, who himself testified to the same facts. In these circumstances, we find no support for Salaiza Zuazo's contention that the government suppressed evidence in violation of <u>Brady</u>.[2]

---

[2]Although this failure to demonstrate suppression is alone sufficient to defeat Salaiza Zuazo's <u>Brady</u> claim, we note that his claim suffers from other fatal defects as well. Gomez Corro's statements were not actually exculpatory, <u>see</u> <u>United States v. Gonzales</u>, 90 F.3d 1363, 1369 (8th Cir. 1996) (no <u>Brady</u> violation where evidence was

## B. Motion for New Trial

We review under an abuse of discretion standard the denial of a motion for a new trial. A defendant is entitled to a new trial based on newly discovered evidence only if he can show (1) that the evidence was not discovered until after the trial; (2) that due diligence would not have revealed the evidence; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is material; and (5) that the evidence is such as to be likely to lead to acquittal. Lindhorst v. United States, 648 F.2d 598, 602 (8th Cir. 1981); United States v. Pope, 415 F.2d 685, 691 (8th Cir 1969). Because Salaiza Zuazo has failed to demonstrate likelihood of acquittal, we conclude that the district court did not err in denying his motion.

Salaiza Zuazo contends that Gomez Corro's statements would likely lead to acquittal because they corroborate in a number of ways his account of his innocent involvement. The primary issue at trial was whether Salaiza Zuazo was aware of the drugs when he made the trip to Minneapolis. Although Gomez Corro's proffer statements are not a part of the record on appeal, they apparently corroborate Salaiza Zuazo's story by confirming many of the details of Salaiza Zuazo's testimony about the drive; for instance, that Gomez Corro did most of the driving, that it was he who filled the gas tank, and that the two men never discussed the presence of the drugs in the car. Gomez Corro's account differs slightly from Salaiza Zuazo's in a few minor details, such as average driving speed.

---

not exculpatory), nor did they contradict the government's theory of guilt, see United States v. Ailport, 17 F.3d 325, 237 (8th Cir. 1994) (no Brady violation where evidence corroborated details of defendant's story but did not contradict government's theory). There has been no showing that any information contained within Gomez Corro's statements could not have been discovered through the exercise of due diligence. See United States v. Jones, 160 F.3d 473, 479-80 (8th Cir. 1998); Gonzales, 90 F.3d at 1368.

Gomez Corro's statements apparently contained one piece of information that may not have already been known to Salaiza Zuazo, namely, that Gomez Corro had been in Minneapolis with the Honda shortly before the trip that resulted in Salaiza Zuazo's arrest. Salaiza Zuazo argues that Gomez Corro's earlier presence in Minneapolis calls into question the government's theory that Salaiza Zuazo's role was to reveal the location of the drugs once they arrived in Minneapolis. On the other hand, Gomez Corro's statements indicated that Gomez Corro did not know that location and that Salaiza Zuazo had said he would deliver the car to watch it being unloaded. Accordingly, the statements would have done little to diminish the government's theory of the case and, on balance, may even have served to buttress it.

The district court found that, "[a]fter considering the withheld evidence as a whole, . . . even if defendant had access to [Gomez Corro's] statements, there is no reasonable probability that the result of the defendant's trial would have been different," and concluded that, on balance, Salaiza Zuazo may have been better off without Gomez Corro's testimony. (Order Denying Defendant's Motion for New Trial at 6.) That determination is entitled to particular deference, as the district court was not only in a superior position to evaluate the evidence as presented at trial but also had the advantage of an in camera review of the notes taken by the government during its proffered sessions with Gomez Corro. Accordingly, we conclude that the district court did not abuse its discretion in denying the motion for new trial.

Nor does Andrade's letter to Salaiza Zuazo warrant a different result. The district court correctly noted that, since Salaiza Zuazo received the letter indicating that Andrade did not know him prior to the trial, there is nothing "newly discovered" about any information contained therein.

Finally, because there were no exceptional circumstances warranting an evidentiary hearing, the district court did not abuse its discretion by declining to

conduct an evidentiary hearing before ruling on the motion for a new trial. <u>United States v. Johnson</u>, 12 F.3d 827, 834 (8th Cir. 1994).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.