# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3530
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Juan C. Munoz, also known as Charlie, | * |
| | * |
| Appellant. | * |

_____

No. 02-3571
_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Humberto Munoz Rodriguez, also | * |
| known as Alexander Araiza, also known | * |
| as Ramon Munoz, also known as Beto, | * |
| | * |
| Appellant. | * |

_____

Submitted: March 11, 2003

Filed: April 3, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and MURPHY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

A jury convicted Juan Carlos Munoz (Munoz) and Humberto Munoz Rodriguez (Rodriguez) of conspiring to distribute and to possess with intent to distribute, within 1000 feet of a playground or schoolyard, 500 grams or more of a mixture containing methamphetamine and a mixture containing cocaine, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A),(C), 860(a). The district court[1] sentenced Munoz to 240 months in prison and Rodriguez to 120 months in prison.

Munoz and Rodriguez appeal, contending that the district court erred in denying their motions for judgment of acquittal, or, in the alternative, for a new trial, as the evidence presented was insufficient to support their convictions. Munoz also argues that the district court erred in calculating the drug quantities involved. Rodriguez argues that the district court erred by admitting the videotape of his post-<u>Miranda</u> statement into evidence. We affirm.

## I. BACKGROUND

"We state the facts in the light most favorable to the jury's verdict." <u>United States v. Washington</u>, 318 F.3d 845, 850 (8th Cir. 2003). Police officers arrested Larry Rederick while investigating drug trafficking in Iowa, Nebraska, and South Dakota. Police obtained a search warrant for his storage unit in Sioux Falls, South Dakota, from which they seized one half pound of methamphetamine. Shortly thereafter, Rederick began to cooperate with police, providing them with a description of his drug supplier, whom police later identified as Guillermo Jaramillo,

---

[1]The Honorable Joseph Bataillon, United States District Judge for the District of Nebraska sitting by designation.

and the supplier's cellular telephone number. Special Agent Hummel contacted Jaramillo, who gave Agent Hummel the telephone number of a contact in South Sioux City, Nebraska, later identified as Munoz.

Investigators obtained a wiretap for Munoz's phone to listen to calls that were related to the investigation. After learning that Munoz had switched phones, investigators obtained a wiretap for the second phone, which was registered to Alexander Araiza, a pseudonym used by Rodriguez. Using surveillance, officers identified both Munoz and Rodriguez speaking on both of the telephones. Officers then monitored Munoz and Rodriguez in different locations, including their temporary residence at 923 First Avenue, Trailer 27, South Sioux City, Nebraska, which was less than three hundred feet from a children's park.

Investigators maintained the wiretap from December 2000 until January 2001. During this time, police heard and recorded numerous conversations in which both Munoz and Rodriguez discussed drug transactions. In one conversation between Munoz and Jaramillo, Munoz stated that he was selling approximately five to six pounds (2.26-2.72 kilograms) of methamphetamine and two kilograms of cocaine per week. Coded conversations between Rodriguez and Salvador Martinez detailed transactions in "soda" (cocaine) and "cd's" (crank or methamphetamine). During one such conversation, Rodriguez and Martinez arranged to meet at a bakery. Police monitored the meeting and subsequently arrested Martinez, seizing from him a small quantity of amphetamine. Officers also observed Munoz and Rodriguez meeting with recognized drug suppliers, including Rosario Placensia and Jaramillo.

Police officers intercepted several telephone calls between Munoz and Rodriguez and Shaun Stevens indicating that Munoz and Rodriguez supplied Stevens with cocaine and methamphetamine. On January 18, 2001, officers intercepted phone calls that led them to believe that a delivery would be made to Stevens's residence that day. Officers began surveillance of Stevens's apartment. Officers saw

Rodriguez enter the apartment, followed shortly thereafter by Munoz. Police executed a search warrant for the apartment. During the search, police seized cellular telephones from Munoz and Rodriguez, which were the telephones that had been the subjects of the wiretaps. Police also seized less than one pound of marijuana and two eight-balls of cocaine. Munoz and Rodriguez were arrested.

Outside of the apartment building, Agents Hansen and Boone informed Rodriguez why they were there and that he was under arrest. They then read his Miranda rights to him and asked if he would be willing to speak with them. Rodriguez consented and was taken to the Sioux City Police Department, where he was interviewed. During the interview, which was recorded, Rodriguez admitted to having sold methamphetamine to Salvador Martinez three times and to purchasing methamphetamine from Placensia. An edited version of the videotape was shown at trial.

## II. SUFFICIENCY OF THE EVIDENCE

Munoz and Rodriguez argue that the district court erred by denying their respective motions for judgment of acquittal and for a new trial. In considering a district court's denial of a defendant's motion for judgment of acquittal, we view "the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Barrios-Perez, 317 F.3d 777, 779 (8th Cir. 2003) (citing United States v. Harmon, 194 F.3d 890, 892 (8th Cir. 1999) (citation omitted)). We will uphold the convictions unless "no reasonable jury could have found the defendant[s] guilty beyond a reasonable doubt." Id. (quotations omitted).

To convict Munoz and Rodriguez of conspiracy, the government was required to prove beyond a reasonable doubt (1) that a conspiracy with an illegal purpose existed, (2) that Munoz and Rodriguez knew of the conspiracy, and (3) that they

knowingly joined and participated in the conspiracy. Washington, 318 F.3d at 852 (citing United States v. Ruiz-Estrada, 312 F.3d 398, 402 (8th Cir. 2002)). A conspiracy may consist of a tacit or implicit understanding rather than an explicit or express agreement. United States v. Crossland, 301 F.3d 907, 913 (8th Cir. 2002) (citing United States v. Pintar, 630 F.2d 1270, 1275 (8th Cir. 1980)). Further, the government was also required to prove beyond a reasonable doubt that Munoz and Rodriguez were conspirators, Washington, 318 F.3d at 853 (citing United States v. DeLuna, 763 F.2d 897, 924 (8th Cir. 1995)), and that they exhibited "some element of cooperation beyond mere knowledge of the existence of the conspiracy," Crossland, 301 F.3d at 913 (citing United States v. Duckworth, 945 F.2d 1052, 1053 (8th Cir. 1991)).

We agree with the district court that the evidence supported Munoz's and Rodriguez's convictions. The government introduced extensive documentary evidence at trial, including numerous tape-recorded phone calls in which Munoz and Rodriguez arranged drug transactions. Testimony by Jaramillo, a co-conspirator, also evidenced Munoz's participation in the conspiracy. Although Jaramillo testified that Rodriguez never distributed controlled substances for him, Rodriguez admitted independently to having sold methamphetamine. Because the cumulative evidence "point[s] in the direction of a concrete, interlocked interest beyond the consummation of the individual buy-sell deals . . . , we will not disturb the conclusion reached by the finder of fact that . . . the association" constituted a conspiracy. Washington, 318 F.3d at 852 (citing United States v. Clay, 37 F.3d 338, 341 (7th Cir. 1994)). Accordingly, we conclude that the evidence amply supports the jury's verdict.

We review the district court's denial of a motion for a new trial for abuse of discretion. United States v. Zuazo, 243 F.3d 428, 431 (8th Cir. 2001); United States v. Cunningham, 133 F.3d 1070, 1075 (8th Cir. 1998). Unlike its review of a motion of acquittal, a district court, in deciding a motion for a new trial, "need not view the evidence in a light most favorable to the government, but may instead weigh the

-5-

evidence and evaluate the credibility of witnesses." United States v. Brown, 956 F.2d 782, 786 (8th Cir. 1992) (citations omitted). The district court, thus, "should grant a new trial 'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" Id. (citing United States v. Lanier, 838 F.2d 281, 284-85 (8th Cir. 1988)). In light of the substantial evidence supporting the verdicts, we conclude that the district court did not abuse its discretion in denying Munoz and Rodriguez new trials.

## III. DETERMINATION OF DRUG QUANTITIES

When sentencing a defendant who has been found guilty by a jury of drug conspiracy in violation of 21 U.S.C. §§ 841 and 846, the sentencing judge must determine the kind and quantity of "'controlled substances' for which [the] defendant should be held accountable." Edwards v. United States, 523 U.S. 511, 513-14 (1998) (citations omitted); United States v. Gallardo-Marquez, 253 F.3d 1121, 1124 (8th Cir. 2001) (citing United States v. Aguayo-Delgado, 220 F.3d 926, 932-33 (8th Cir. 2000) (holding that, after Apprendi v. New Jersey, 530 U.S. 466 (2000), a district court may make the determination as to drug quantity unless the quantity found increases the sentence beyond the statutory maximum)). The district court's determination of drug quantity is a factual finding, which we review for clear error. Id.; United States v. Hiveley, 61 F.3d 1358, 1362 (8th Cir. 1995) (citing United States v. Sleet, 893 F.2d 947, 949 (8th Cir. 1990)).

Munoz argues that the district court erred in determining the drug quantities attributable to him. He contends that the evidence presented was not credible and was insufficient to support the court's finding that he conspired to distribute or to possess with the intent to distribute 500 grams or more of methamphetamine. The district court adopted the Presentence Report (PSR), which Munoz had challenged only generally by a comprehensive assertion of innocence. Munoz did not object to the specific factual statements contained within the PSR. We have held that "unless

a defendant objects to specific factual allegations contained in the PSR, a district court may accept the facts as true for purposes of sentencing." United States v. Young, 272 F.3d 1052, 1055 (8th Cir. 2001) (citing United States v. Moser, 168 F.3d 1130, 1132 (8th Cir. 1999) (citations omitted)). We need not determine whether Munoz preserved this issue for appeal, however, as his argument fails in any event. The jury found beyond a reasonable doubt that Munoz was responsible for 500 grams or more of methamphetamine, and the district court did not err in adopting that finding.

## IV. ADMISSION OF VIDEOTAPE INTO EVIDENCE

Rodriguez argues that the district court wrongly admitted the videotape recording of his post-Miranda statement into evidence. We review the district court's decision to admit evidence for abuse of discretion. United States v. Franks, 939 F.2d 600, 602 (8th Cir. 1991). In United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), we enumerated seven foundational requirements that must be satisfied for a tape to be admitted into evidence. See also United States v. Calderin-Rodriguez, 244 F.3d 977, 986 (8th Cir. 2001). Notwithstanding that these requirements were satisfied, Rodriguez contends that the tape should not have been admitted because it was of poor quality. Because the quality of the recording did not call into question its trustworthiness, and because the evidence indicates that the recording was audible and intelligible, we conclude that the district court did not abuse its discretion in admitting it into evidence. See United States v. Le, 272 F.3d 530, 532 (8th Cir. 2001) (citing United States v. Martinez, 951 F.2d 887, 888 (8th Cir. 1991)).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.