# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4164

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Victor Jose Barraza Cazares, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 16, 2006
Filed: October 11, 2006

_____

Before LOKEN, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Victor Jose Barraza Cazares (the "defendant") appeals his conviction for conspiracy to distribute more than 500 grams of methamphetamine. We affirm the judgment of the district court.[1]

---

[1]The Honorable Joe Billy McDade, United States District Judge for the District of Central Illinois, sitting by designation.

I.    Background

Sergeant Rudy Mora, a New Mexico State Patrol officer, stopped a car near Albuquerque in October 2004.  The defendant was riding in the front passenger seat of the car.  A co-defendant, Ricardo Barraza ("Barraza"), the owner of the car, was driving.  Barraza is the defendant's cousin.  The car was registered in Nebraska under Barraza's name.

According to Sergeant Mora, during an initial portion of the stop when Barraza and the defendant were still sitting in the car, Barraza and the defendant avoided eye contact.  Barraza appeared shaky and nervous while the defendant appeared generally calm.  Sergeant Mora, Barraza, and the defendant all spoke Spanish.  Sergeant Mora asked the defendant and Barraza about their travel plans, and the two men gave inconsistent answers.  The defendant stated that he was traveling to Nebraska for a week of vacation.  Sergeant Mora noticed the car had an overwhelmingly fruity odor, like that associated with car air fresheners, but he could see no air freshener in the car.  He decided to investigate further.  He obtained consent to search the vehicle from both men and instructed the men to stand apart from one another away from the vehicle.

Sergeant Mora was a canine handler.  He conducted a manual search and used a dog to search the car.  The dog identified the rear, driver's side taillight area as suspicious.  According to Sergeant Mora, the defendant and Barraza tried to talk to one another once during the search, and Sergeant Mora instructed them to remain silent.  Also, Barraza and the defendant looked interested and anxious when Sergeant Mora and the dog approached the trunk area, but looked more relaxed when the search focused on the front of the vehicle.  Sergeant Mora found approximately four pounds of high purity methamphetamine in the housing of the left rear taillight.  The entire search, including the dog sniff and removal of the taillight assembly, took about forty minutes.  Sergeant Mora arrested the two men.

Although the defendant had told Sergeant Mora that he was traveling to Nebraska for a one-week vacation, the search revealed that the defendant carried no luggage and only $100 in cash. The search also revealed a black nylon bag containing clothing that belonged to Barraza. Sergeant Mora reported that the defendant looked relieved upon being arrested, did not appear surprised or angry at the discovery of the drugs, and did not make any attempt to communicate with Barraza after discovery of the drugs.

Various agents met with Barraza while the two men were in custody following the stop. One of these agents was a DEA agent who also happened to be named Mora. DEA Agent Mora asked Barraza to complete the trip and participate in a controlled sale. Barraza expressly consented to proceed to his destination, Grand Island, Nebraska, and complete the intended sale.

No government agent claims to have obtained the defendant's express consent to participate in the controlled sale, and the defendant alleges that he never expressly agreed to participate in the controlled sale. Agents and officers testified, however, that the defendant was present for DEA Agent Mora's discussions with Barraza during which Agent Mora and Barraza spoke Spanish and Agent Mora proposed and explained the controlled delivery. The testimony placed the defendant close enough to Agent Mora and Barraza to hear the discussions. Agents also testified that the defendant at no time refused to cooperate. Finally, agents testified that if either man had refused to cooperate, they would not have been able to conduct the controlled delivery.

Barraza called the intended buyer in Nebraska. The defendant did not participate in the call, but stood close enough to Barraza to hear Barraza's end of the Spanish language conversation. Agents flew Barraza and the defendant to Nebraska where both men participated in the controlled sale of the drugs to another co-defendant, Rogelio Rios Lopez ("Lopez"). Agents testified that the defendant did not

appear anxious and spoke to no one during the flight. The sale took place via a vehicle switch in which the defendant and Barraza met Lopez in a public parking area. Many officers observed the switch and participated in the planning and execution of the switch, including the apprehension of Lopez following the switch. The officers who observed the vehicle switch and watched the defendant and Barraza meet Lopez did not report any reaction by Lopez to suggest that the defendant's presence was a surprise. From all accounts, the delivery went smoothly. There is no evidence to suggest that the defendant protested or conducted himself in a manner that suggested a lack of consent in New Mexico, during the flight to Nebraska, or before, during, or after the controlled sale in Nebraska.

The government charged Barraza, Lopez, and the defendant with conspiracy to distribute and possess with intent to distribute in excess of 500 grams of methamphetamine. In April 2005, the defendant's attorney requested exculpatory evidence from the government and requested information specifically regarding statements by Lopez and Barraza. The government provided Barraza's proffer statement, but provided no information regarding Lopez. Barraza then pleaded guilty, was released pending sentencing, fled, and remains a fugitive.

At a pre-trial conference on June 20, 2005, the day before trial was to begin for the defendant and Lopez, Lopez stated that he did not want to go to trial. Later that day, he pleaded guilty. The government claims that the defendant's counsel was present at both of these proceedings but did not arrange to interview Lopez. The defendant does not contest the assertion that his counsel was present when Lopez stated the intention to plead guilty. The defendant claims, however, that his counsel was not present during the actual plea hearing that took place later in the day. The defendant's counsel did not attempt to interview Lopez that day or any time prior to that day.

The defendant's trial began the following day. On the morning of June 21, in the hour prior to the start of the defendant's trial, the government interviewed Lopez. During this interview, Lopez stated that he did not know the defendant, had never seen the defendant prior to the controlled delivery, and did not expect Barraza to be accompanied by another person during the delivery. Shortly after hearing this statement from Lopez, the prosecutor made his opening remarks to the jury in the defendant's trial. The prosecutor stated:

> This is a case of two drug couriers and their connection. Two mopes taking methamphetamine from Phoenix, Arizona, to Grand Island, Nebraska. The defendant, Victor Jose Barraza Cazares, was one of his couriers and his connection was Rogelio Rios-Lopez.

Jury selection and presentation of the Government's case lasted two days (June 21 and 22). The defendant presented no evidence, and the case was submitted to the jury on June 23. On June 24, after the case was submitted to the jury but before the jury returned its verdict, the defendant's attorney learned from Lopez's attorney that prosecutors had interviewed Lopez. Lopez's attorney stated that Lopez had disclaimed any prior knowledge of, or acquaintance with, the defendant and denied knowing the defendant would be present at the sale. The defendant's attorney notified the court of the statement. In open court, the prosecutor admitted he had obtained the statement from Lopez, the statement was not recorded or conveyed to the defendant's counsel, and the statement may have been exculpatory. Because the case had already been submitted to the jury, the district court made certain the issue of this potential violation of Brady v. Maryland, 373 U.S. 83 (1963), was preserved for appeal and permitted the jury to continue its deliberations. The jury then returned a verdict of guilty. The defendant moved for new trial, and, in a written opinion, the district court denied the motion.

The defendant's counsel preserved three other points of alleged error for our review. At trial, Sergeant Mora testified regarding the traffic stop, search, and arrest.

Over a hearsay and confrontation clause objection, Sergeant Mora testified that the defendant and Barraza gave inconsistent answers when asked about the purpose of their trip. Second, the defendant requested a jury instruction that would have expressly stated that the defendant had a constitutional right to remain silent. The instruction actually given was based on Eighth Circuit Model Jury Instruction No. 3.05 (2005). Third, the defendant moved for a directed verdict and judgment notwithstanding the verdict, thus preserving a claim of insufficient evidence.

II.     Discussion

Of the four separate issues the defendant raises on appeal, three merit little discussion. Regarding the hearsay/confrontation clause issue, Sergeant Mora did not offer an out of court statement for the truth of the matter asserted. Fed. R. Evid. 801(c) (defining hearsay). Rather, he explained that he noticed inconsistencies in the answers that the two occupants of the car, the defendant and Barraza, gave during the traffic stop. Sergeant Mora's testimony demonstrates he believed one or both of the men lied. It does not demonstrate which man he believed to have lied, nor is it an attempt to persuade the jury of the truth of the content of either man's out-of-court statement. Sergeant Mora also explained that these inconsistencies contributed to his decision to investigate the two occupants and the car. Accordingly, the statements were admissible to show context for the continued investigation. United States v. Davis, 449 F.3d 842, 847 (8th Cir. 2006) (stating that a statement is not hearsay if it is admitted to provide context by showing why police undertook an investigation).

Regarding the jury instruction issue, the instruction the district court submitted to the jury was based on Eighth Circuit Model Jury Instruction No. 3.05 (2005), which stated there was no burden of proof on the defendant and the jury could not consider in any way or discuss the fact that the defendant did not testify. As mentioned, the defendant had wanted an instruction that would have specifically stated he had a constitutional right to remain silent. Although the defendant's proposed instruction

would have been permissible, the actual instruction correctly characterized the law, adequately informed the jury of the defendant's right to remain silent, and explained the impropriety of making adverse inferences based on that fact. B & B Hardware, Inc. v. Hargis Indus., 252 F.3d 1010, 1012 (8th Cir. 2001).

Regarding sufficiency, a reasonable jury could find that the evidence taken as a whole established guilt beyond a reasonable doubt. First, experts testified that the quantity and purity of the methamphetamine in this case was substantial. There were approximately four pounds of methamphetamine of 98-99% purity and a street value of over $30,000. Officers also testified regarding the nature and mechanics of drug transactions and explained that a transaction of this scale likely would not have taken place if Barraza arrived accompanied by a companion that the buyer did not expect. Second, the arresting officer testified regarding the defendant's demeanor (including his relief upon being arrested and lack of anger or surprise at the discovery of the drugs), and numerous officers or agents testified regarding the defendant's cooperation, demeanor, and failure to protest at any time prior to or during his participation in the controlled sale. Third, the arresting officer reported that Barraza's car had an overwhelming odor. This fact tends to make it less likely that the defendant could have been unaware that contraband was present. Fourth, the defendant's claim to be traveling to Nebraska for a one-week vacation was inconsistent with the fact that the defendant carried no clothing or luggage and only $100. If the jury believed that the defendant lied, it could have inferred that he was dissembling to cover an illegal scheme. Further, because the car was registered in Nebraska a jury could reasonably conclude that the defendant was not telling the truth regarding his intention of making a round-trip visit to Nebraska.

The only element of the offense truly contested on appeal is the defendant's knowledge of the conspiracy. The defendant argues it is improper to infer knowledge based on the fact that he was taken to Nebraska and involved in the controlled delivery. He argues that he did not consent to participate in the controlled delivery

and did not understand what was happening, but rather, was merely shuttled around by officers and agents while in custody following his arrest. His own actions, however, together with the officer's observation of the successful delivery refute his claim. He was present when a Spanish-speaking officer presented the plan to Barraza, and he was present when Barraza called Lopez to arrange the delivery. While the evidence regarding the defendant's knowledge was not so great as to ensure a conviction, it was sufficient and precludes our court from setting aside the verdict. United States v. Smith, 450 F.3d 856, 860 (8th Cir. 2006) ("We will reverse a conviction for lack of sufficient evidence only if no reasonable juror could have concluded beyond a reasonable doubt the government met its burden of proof as to each element of the offense.").

The Brady issue merits more discussion. The government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment, and this duty extends to impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). To show a violation, the defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence. United States v. Thomas, 940 F.2d 391, 392 (8th Cir. 1991). We review for abuse of discretion the district court's denial of a new trial based on an alleged Brady violation. United States v. Almendares, 397 F.3d 653, 665 (8th Cir. 2005); United States v. Gary, 341 F.3d 829, 832 (8th Cir. 2003).

Regarding the first requirement, the statement by Lopez was clearly exculpatory. In fact, the prosecutor essentially admitted this point in open court when he stated that Lopez's statement "may be exculpatory." The government now argues that co-conspirators need not know one another or know of one another's existence to be co-conspirators, and therefore the statement did not bear upon an element of the offense. It is true that personal knowledge of, or familiarity with, each co-conspirator is not required to show a conspiracy. United States v. Bascope-Zurita, 68 F.3d 1057,

-8-

1061 (8th Cir. 1995) ("One does not have to have contact with all of the other members of a conspiracy to be held accountable as a conspirator."). Nevertheless, the statement by Lopez and the question of whether the defendant knew Lopez are clearly *relevant* to the issue of the defendant's role or participation in the conspiracy. The defendant knew Barraza. If the defendant also knew Lopez it would tend to make it more likely that he was engaged in a conspiracy with the two other men. Further, Lopez's statement is relevant and exculpatory to the extent it tends to buttress the defendant's claim regarding a lack of acquaintance.

Also, when assessing whether the statement is exculpatory, it is important to look at the government's case to see how Lopez's statement fits into the trial as a whole. Here, Lopez's statement would have tied back into the expert testimony presented by the government. The government used an expert to suggest that Lopez, and, in fact, any drug dealer, would not have gone through with the purchase if Barraza had unexpectedly shown up with a person unknown to Lopez. The use of this expert shows that the government not only failed to disclose the statement, but implied the negative of Lopez's statement and urged the jury to infer an acquaintance between Lopez and the defendant. Lopez's statement would have been a direct challenge to the expert's testimony.

Regarding the second requirement, the assessment of materiality requires a weighing of the evidence, not merely identification of the non-disclosed statement as helpful or unhelpful to the defendant. "Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" United States v. Conroy, 424 F.3d 833, 837 (8th Cir. 2005) (quoting Bagley, 473 U.S. at 682). In other words, "Brady materiality is not evaluated by a sufficiency of evidence test." United States v. Jones, 160 F.3d 473, 479 (8th Cir. 1998). Here, the government's case against the defendant was strong. As such, we do not believe that an earlier

revelation of Lopez's statement would have been sufficient to overcome the balance of the evidence and "undermine confidence in the outcome."[2]

Regarding the third requirement, we consider non-disclosed evidence to have been suppressed by the government if (1) the government failed to disclose it in time for the defendant to use it, Almendares, 397 F.3d at 664, *and* (2) the evidence was otherwise unavailable to the defendant. United States v. Zuazo, 243 F.3d 428, 431 (8th Cir. 2001). Clearly the government failed to disclose Lopez's statement in time for the defendant to use it. We believe, however, that the evidence was available and therefore not suppressed. Lopez pleaded guilty on June 20, and the interview where prosecutors obtained Lopez's statement occurred on the morning of June 21. Defendant's attorney knew Lopez was represented by counsel and knew that Lopez had decided to plead guilty. Defendant's attorney could have, at any time following Lopez's decision to plead guilty, contacted Lopez's counsel to talk to Lopez or to discover that Lopez had talked to prosecutors.

The defendant argues that Lopez's statement was "unavailable" for Brady purposes because counsel should not be expected to investigate a case while trying the case and because a translator would have been necessary to permit defendant's attorney to talk to Lopez. The defendant also argues that it was not clear where Lopez was being held. These arguments are not without merit. In fact, we

---

[2]The defendant directs our attention to the fact that, shortly after obtaining Lopez's statement, the prosecutor made the opening remark quoted above. The remark may be interpreted to mean that the defendant was Lopez's contact—an assertion that enjoys no support in the record and contradicts Lopez's statement. The remark may also be interpreted to mean that some other person (such as the unknown person who supplied the drugs or Barraza) was Lopez's contact. We mention this fact to note that we considered the prosecutor's statement and the timing of this statement in our assessment of materiality. The district court properly warned and instructed the jury not to rely upon opening statements as evidence. Accordingly, this potentially prejudicial stray comment does not alter the outcome of our Brady analysis.

agree that, in general, the question of "availability" under the Brady test should not depend on counsel's ability to conduct an ongoing investigation after a trial starts.

Here, however, the nature of the information contained in Lopez's statement and the possession of that information by Lopez's attorney make this case unusual. Lopez stated that he had not previously met the defendant and did not expect the defendant at the transaction. If Lopez truly did not know the defendant, the defendant would have already known this fact. Accordingly, all that was unknown to the defendant and his attorney was the *fact* of Lopez's statement, not the *content* of that statement. Further, the fact that prosecutors had interviewed Lopez could have easily been discovered with a simple phone call to Lopez's attorney. As such, an ongoing investigation during trial was not required to reveal the evidence. Given the unusual nature of the statement at issue and the availability of Lopez's attorney, who demonstrated his willingness to disclose the statement, we cannot say that the district court abused its discretion when it denied the motion for a new trial based on Brady.

Notwithstanding the result in this case, we believe it is important to note that, when the government obtains an exculpatory statement and fails to disclose that statement, the government proceeds at its own risk and places any resulting conviction in jeopardy. Here, we can see no justification for the failure to disclose, and although we ultimately find no abuse of discretion in the denial of the motion for a new trial, our opinion should not be read to suggest that the government acted properly in this case.

We affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the court's opinion regarding the admission of Sergeant Mora's testimony, the sufficiency of the evidence, and the jury instructions. I also agree that

Victor Jose Barraza-Cazares was not entitled to a new trial based on an alleged violation of the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose information favorable to the accused that is material to the defense and not otherwise available. If, as Rogelio Rios-Lopez told law enforcement officers, he did not know Barraza-Cazares before the controlled drug transaction, then this fact obviously was known to Barraza-Cazares, and the government had no constitutional duty to disclose it to him. *United States v. Zuazo*, 243 F.3d 428, 431 (8th Cir. 2001); *United States v. Wilson*, 787 F.2d 375, 389 (8th Cir. 1986). That Rios-Lopez made a statement recounting this fact is not material. The hearsay statement was not admissible at trial, and Barraza-Cazares already knew the substance of the information if it was true.

I decline to join the court's statement at the conclusion of its opinion that the government had "no justification" for failing to disclose information that was either known to the defendant or immaterial, and its suggestion that the government acted improperly. As the court itself explains, the government's constitutional duty to disclose exculpatory information is limited to information that is unknown to the defendant and material to the defense. *Ante*, at 8-10; *see also Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Coppa*, 267 F.3d 132, 140-46 (2d Cir. 2001). There is a difference of opinion about whether ethical rules adopted in various States do or should impose on prosecutors a duty to disclose broader than what is required by the Due Process Clause, *compare*, *e.g.*, *In the Matter of Attorney C*, 47 P.3d 1167, 1170-71 (Colo. 2002) (reading Colorado Rule of Professional Conduct 3.8(d) consistent with *Brady* and "declin[ing] to impose inconsistent obligations upon prosecutors attempting to comply with both procedural rules and rules of professional conduct") *with Kyles*, 514 U.S. at 437 (stating that standards recommended by American Bar Association call for more disclosures than required by the Due Process Clause), but the court does not invoke such rules or purport to apply the ethical standards of any State to support its criticism of the prosecution in this case. *Cf.* NE Gen. R. 1.7(b) (declining specifically to adopt particular codes of professional

responsibility or codes of ethics promulgated by others to govern practice in the United States District Court).

Under the constitutional standard discussed by the court, it is analytically inconsistent to say that the government complied with its obligations under *Brady*, and breached no constitutional duty to disclose, but at the same time to suggest that the prosecution had no justification for failing to disclose and did not act properly. I would refrain from including additional commentary that is not supported by the constitutional authorities on which the court relies.

———————————————