# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3185
_____

United States of America

*Plaintiff - Appellee*

v.

Steven Earl Adkins

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Western
_____

Submitted: September 19, 2025
Filed: December 16, 2025
_____

Before SMITH, GRUENDER, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

After Steven Earl Adkins pled guilty to one count of transportation of a minor with intent to engage in criminal sexual activity and one count of being a felon in possession of a firearm, the district court[1] sentenced him to 292 months'

_____

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

imprisonment on the transportation count and 180 months' imprisonment on the firearm count, with the sentences running concurrently. Adkins appeals, asserting that the district court erroneously denied his motion to withdraw his guilty plea to the transportation count—filed after sentencing—in which he asserted that he learned for the first time at sentencing that the minor victim was missing and would have been unavailable to the prosecution had Adkins gone to trial. Adkins also asserts that the district court committed procedural error and imposed a substantively unreasonable sentence with respect to the firearm count. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Adkins was charged in a four-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), two counts of transportation of a minor with the intent to engage in prostitution, in violation of 18 U.S.C. § 2423(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). The charges stemmed from Adkins's involvement with a 16-year old runaway, whom Adkins connected with through Craigslist, a website the minor had been using to request rides in various states. Adkins picked the minor up from a truck stop in Nebraska and took her to his home in Neola, Iowa, where the minor was to reside with Adkins in exchange for $1,000 a month. Adkins and the minor engaged in a sexual relationship, which continued after the minor revealed to Adkins that she was 16 years old.

Several months into this arrangement, FBI investigators, who had been investigating the minor's whereabouts, found Adkins and the minor together. Pursuant to a search warrant, the FBI investigators searched Adkins's residence. Law enforcement seized various electronic devices, which had files containing child sexual abuse material, as well as 16 firearms, including shotguns, rifles, and handguns, along with ammunition. Adkins later admitted to having a sexual relationship with the minor, to taking her across state lines, and to being aware that she suffered from mental health issues that caused her to act younger than her age.

-2-

Adkins ultimately pled guilty, pursuant to a plea agreement, to the felon-in-possession count and one transportation count, in exchange for dismissal of the second transportation count and the possession of child pornography count. At sentencing, the district court heard testimony from FBI Special Agent Buckley Wright, who provided general details about the investigation and the evidence gathered against Adkins. During his testimony, Agent Wright explained that the minor involved had been interviewed by law enforcement, but that as of the date of the sentencing hearing, he was unaware of her whereabouts as she was an active runaway. The district court then calculated the United States Sentencing Guidelines range to be 292 to 365 months' imprisonment and ultimately imposed a sentence of 292 months for the transportation count and 180 months for the felon in possession count, with the sentences running concurrently.

Thirteen days after sentencing, Adkins filed a motion to withdraw his guilty plea, to vacate the guilty plea, sentence, and judgment, and for a new trial and a request for a hearing. Adkins asserted that he learned for the first time during sentencing that the minor's whereabouts were unknown to the Government, and that this qualified as exculpatory evidence which the Government was constitutionally bound to disclose to him and bound to disclose under orders in the case. However, in his motion, Adkins noted that two separate public releases were issued by police departments in Colorado and California regarding the minor's runaway status before his guilty plea. The district court denied the motion, finding that Adkins did not identify any Federal Rule of Criminal Procedure under which he was seeking relief and concluding that Rule 11(e) of the Federal Rules of Criminal Procedure deprived the court of the authority to consider the motion because it limits post-sentencing challenges to a plea to direct appeals or collateral attacks. In the alternative, the district court concluded that the minor's unavailability did not amount to materially exculpatory evidence. This appeal follows.

II.

Adkins first asserts that the district court erred when it denied his post-sentencing motion and did so without a hearing. Adkins argues that the district court erred "by failing to closely examine the issues set forth" in the motion, in which Adkins demonstrated the Government committed a Brady[2] violation and violated district court orders in the case by withholding information that the minor was an unavailable witness, which precluded him from presenting an affirmative defense. "We review both the denial of a motion to withdraw [a guilty plea] and the refusal to hold a hearing under the abuse of discretion standard." United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992).

The district court did not abuse its discretion in denying Adkins's motion without a hearing because Rule 11(e) of the Federal Rules of Criminal Procedure explicitly provides that the only mechanism for challenging a guilty plea post-sentencing is through a direct appeal or collateral attack, not a motion to withdraw the guilty plea. Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack."). Further, to the extent Adkins's motion sought a new trial, such relief is unavailable because he pled guilty and no trial was held. See Fed. R. Crim. P. 33; United States v. Graciani, 61 F.3d 70, 78 (1st Cir. 1995) ("By its express terms, Rule 33 is confined to those situations in which a trial has been had."). Adkins thus sought relief that the district court was unable to give, and the district court did not err in denying the motion.

To the extent Adkins raises the Brady issue as a separate and distinct issue on direct appeal, he fares no better. It is not altogether clear that such a claim is cognizable because Adkins entered a guilty plea. See United States v. Ruiz, 536

---

[2] Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

U.S. 622, 633 (2002) ("[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."); see also United States v. Conroy, 567 F.3d 174, 179 (5th Cir. 2009) (per curiam) ("The issue in Ruiz was whether prosecutors are required to disclose impeachment information before the defendant enters a plea agreement. The Supreme Court held that the withholding of material impeachment information does not render a guilty plea involuntary. [Defendant] argues that the limitation of the Court's discussion to impeachment evidence implies that exculpatory evidence is different and must be turned over before entry of a plea. Ruiz never makes such a distinction nor can this proposition be implied from its discussion." (citations omitted)); but see McCann v. Mangialardi, 337 F.3d 782, 788 (7th Cir. 2003) (opining that, because Ruiz distinguishes between exculpatory and impeachment evidence, "it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors . . . have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea").

Assuming without deciding that Adkins may maintain his Brady challenge after a guilty plea, he "must establish that the government (1) suppressed evidence; (2) that was favorable to him; and (3) material to the outcome of the trial." United States v. Smart, 60 F.4th 1084, 1095 (8th Cir. 2023). Adkins falls at the first hurdle. We have explained that "[t]he government does not suppress evidence in violation of Brady by failing to disclose evidence to which the defendant had access through other channels." United States v. Zuazo, 243 F.3d 428, 431 (8th Cir. 2001). "There is no Brady violation if 'the defendant[s], using reasonable diligence, could have obtained the information' themselves." United States v. Jones, 160 F.3d 473, 479 (8th Cir. 1998) (alteration in original) (citation omitted). Here, Adkins stated in his own post-sentencing motion that the victim's runaway status was the subject of public press releases that were issued prior to the date he entered his guilty plea. Had Adkins used reasonable diligence, this information would have been available to him. Thus, Adkins's own statements defeat any claim that the Government suppressed evidence in violation of Brady. See, e.g., United States v. Jones, 34 F.3d

596, 600 (8th Cir. 1994) ("When information is readily available to the defendant, it is not <u>Brady</u> material, and the prosecution does not violate <u>Brady</u> by not discovering and disclosing the information.").

## III.

Adkins next asserts that his sentence on the firearm count is both procedurally flawed and substantively unreasonable. Adkins asserts that the district court failed to properly calculate his Guidelines range and imposed an "unusually harsh sentence without sufficient justification." "We review a district court's sentence in two steps, first reviewing for significant procedural error, and second, if there is no significant procedural error, we review for substantive reasonableness." <u>United States v. Ayres</u>, 929 F.3d 581, 582-83 (8th Cir. 2019). Where, as here, a defendant fails to object to an alleged procedural error, we review for plain error. <u>United States v. Wise</u>, 17 F.4th 785, 788 (8th Cir. 2021). Further, we consider the substantive reasonableness of a sentence under an abuse-of-discretion standard of review. <u>Id.</u> at 789.

However, we need not consider Adkins's specific contentions because his arguments are foreclosed by the concurrent sentence doctrine. "The concurrent sentence doctrine allows courts to decline to review the validity of a concurrent conviction or sentence when a ruling in the defendant's favor 'would not reduce the time he is required to serve' or otherwise 'prejudice him in any way.'" <u>Eason v. United States</u>, 912 F.3d 1122, 1123 (8th Cir. 2019) (citation omitted). Thus, "where a defendant seeks to challenge the legality of a *sentence* that was imposed for a valid conviction, . . . [and] the challenged sentence runs concurrently with a valid sentence of an equal or greater duration," a court may decline to review the sentence. <u>United States v. Jefferson</u>, 60 F.4th 433, 436 (8th Cir. 2023) (citation omitted). Here, Adkins was sentenced to 180 months on the firearm count, which is completely subsumed by the concurrent 292-month sentence for the transportation count. Because ruling in Adkins's favor on his challenge to his 180-month sentence "would not reduce the time he is required to serve," we decline to consider the merits of his claim. <u>See</u> <u>Eason</u>, 912 F.3d at 1123 (citation omitted).

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____