# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HABIB TAWFEQ SALEH,
         *Petitioner-Appellant,*

v.

GARY FLEMING,
         *Respondent-Appellee.*

No. 04-35509

D.C. No.
CV-03-03106-JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Chief District Judge, Presiding

Argued and Submitted
March 5, 2007—Seattle, Washington

Filed January 3, 2008

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge O'Scannlain;
Concurrence by Judge Berzon

93

**COUNSEL**

Corey Endo, Research and Writing Attorney, Federal Public Defender, Seattle, Washington, argued the cause and was on the briefs for the petitioner-appellant. Thomas W. Hillier, II, Federal Public Defender, was on the briefs.

Ronda D. Larson, Assistant Attorney General, Seattle, Washington, argued the cause for the respondent-appellee and was on the brief. Rob McKenna, Attorney General, State of Washington, was on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a phone conversation with police investigators initiated by a suspect who is in jail for an unrelated offense constitutes a "custodial interrogation" under *Miranda v. Arizona*, 384 U.S. 436, 442 (1966), and its progeny.

I

Elizabeth Edwards was the manager of the Seattle, Washington apartment complex in which she lived. On July 9, 1996, she failed to report to work. Edwards's maintenance supervisor, Joel Keller, went to her apartment to check on her

and discovered Edwards lying seriously injured on the living room floor. Keller called 911 and soon thereafter the police and paramedics arrived. Edwards had suffered blows to the head and face, two of which left indentations in her skull. Her sinus cavities were crushed and bone fragments were driven into her brain. She died of complications caused by the attack a week later.

After initially suspecting a recent boyfriend of Edwards as the murderer, the police eventually focused their investigation on Edwards's former husband, Habib Saleh. On March 3, 1998, a Seattle Police Detective went to the King County Jail to interview Saleh, who was serving a jail sentence for assaulting his son-in-law. Detective Ramirez took Saleh to an interview room in the jail and interrogated him after reading him his *Miranda* rights. On March 25, 1998, Detective Ramirez returned to the jail to interview Saleh again. After the detective presented Saleh with a written copy of his *Miranda* rights, Saleh asked for an attorney. Detective Ramirez asked Saleh what he wanted to do, and Saleh began to cry and said that he wanted the electric chair so he could join Edwards. He also said that he had nothing to do with Edwards's death.

The next day, Saleh placed a collect call from the jail to Detective Ramirez, and the two of them discussed the Edwards case. Saleh again told Detective Ramirez that he wanted the electric chair so he could be with Edwards, and again denied killing Edwards.

The State charged Saleh with first degree murder. At trial, the evidence presented included the following: that Saleh had a history of "verbal and physical" confrontations with Edwards; that within an hour of the attack on Edwards, Saleh had attacked his son-in-law in similar fashion to Edwards's attack; that blood spatter on a fascia board outside Edwards's apartment was consistent with Saleh's DNA and with his lowering himself onto Edwards's lanai from the roof; that, at 1:42

a.m. on July 9, Saleh received treatment for a laceration on his forearm; and that the scar from that wound matched the shape of the stain outside Edwards's apartment.

At trial, the State tried to introduce certain statements (concerning his love for Edwards and his desire to be executed) that Saleh had made to police during the conversations that had taken place in March 1998. The trial court suppressed Saleh's statements of March 3, 1998, finding that the State had failed to demonstrate that Saleh had understood his *Miranda* warning. Additionally, because the statements made on March 25, 1998, were part of a custodial interrogation and were made after Saleh had asked for counsel, those statements were suppressed. The court also found that the March 25, 1998, statements, though inadmissible, were not the product of coercion but were voluntary. The court concluded, however, that the statements made to Detective Ramirez during the phone call that Saleh initiated on March 26, 1998, were admissible.

The Jury found Saleh guilty of first degree murder, and the trial court sentenced him to 320 months in prison.

On direct appeal, the Washington Court of Appeals affirmed Saleh's conviction. Saleh's petition for review in the Washington Supreme Court was denied, concluding his direct appeal in state court. Saleh then filed a collateral attack on his conviction in state court (a personal restraint petition), which the Washington Court of Appeals denied. He thereafter filed a motion for discretionary review in the Washington Supreme Court, but the Commissioner of that court denied the motion.

On November 13, 2003, Saleh filed his federal habeas petition with the district court arguing multiple grounds for relief. On April 14, 2004, the magistrate judge issued her Report and Recommendation recommending that Saleh's petition be denied. On June 2, 2004, the district court adopted the Report and Recommendation of the magistrate judge, and denied

Saleh's petition with prejudice. Saleh timely appealed, and a motions panel of this court issued a certificate of appealability on five issues.[1]

II

A

Saleh argues that the state trial court erred in admitting the statements he made to the police in the March 26, 1998, phone call. The Washington Court of Appeals held that although Saleh was in jail during the phone call, because he initiated the call and was free to end the conversation at any time, it was not "custodial," and thus no *Miranda* warnings were required. Saleh argues that the Court of Appeals's decision was contrary to the Supreme Court's decision in *Mathis v. United States*, 391 U.S. 1 (1968).

**[1]** In *Mathis*, the Supreme Court did indeed hold that "nothing in the *Miranda* opinion . . . calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." *Id.* at 4-5. But the facts of *Mathis* were unlike the facts here in significant respects. First, the interrogation in *Mathis* was initiated by a federal agent, who interviewed Mathis while he was in state prison, *id.* at 3 n.2; here, the conversation in question was a phone conversation initiated by Saleh. Second, there is no indication in *Mathis* that the prisoner was free to end the interrogation with the agent; here, it is undisputed that Saleh could have terminated the phone call he had begun at any time. Thus, *Mathis*'s dependence upon *Miranda*'s discussion of custody as relating to a deprivation of freedom by the authorities, 391 U.S. at 5, is of no help to Saleh here, where he freely placed the phone call and his freedom to terminate

---

[1]In a concurrently filed memorandum disposition, we affirm the district court's denial of the petition as to the other issues covered by the COA. *See Saleh v. Fleming*, No. 04-35509 (filed January 3, 2008).

the discussion of Edwards's murder was unaffected by his unrelated incarceration.

[2] We agree with the Eighth Circuit that "incarceration does not *ipso facto* render an interrogation custodial," and that the need for a *Miranda* warning to the person in custody for an unrelated matter will only be triggered by "some restriction on his freedom of action in connection with the interrogation itself." *Leviston v. Black*, 843 F.2d 302, 304 (8th Cir. 1988); *see also Cervantes v. Walker*, 589 F.2d 424, 427-28 (9th Cir. 1978) (rejecting a per se requirement of *Miranda* warnings for all persons interrogated while incarcerated). Accordingly, the Washington Court of Appeals's determination that the March 26, 1998, phone conversation was not custodial for purposes of *Miranda* was not contrary to clearly established Supreme Court precedent.[2]

B

[3] Saleh also argues that the March 26, 1998, statements should have been suppressed under the "cat out of the bag" theory set forth in *United States v. Bayer*, 331 U.S. 532, 540 (1947) ("[A]fter an accused has once let the cat out of the bag by confessing . . . he is never thereafter free of the psychological and practical disadvantages of having confessed. . . . In such a sense, a later confession always may be looked upon as fruit of the first."). Saleh argues that the statements made on March 26 were substantially similar to the ones he made in the earlier conversations on March 3, 1998, and March 25, 1998, in which his *Miranda* rights were violated. He contends, in effect, that these cats could not be put back in the bag.

---

[2]The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this case. AEDPA limits habeas relief in a claim such as this to situations in which the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 407-09 (2000).

**[4]** However, that argument is foreclosed by *Medeiros v. Shimoda*, 889 F.2d 819 (9th Cir. 1989). In *Medeiros*, we held that, under *Oregon v. Elstad*, 470 U.S. 298 (1985), the "cat out of the bag" theory does not apply where a confession is voluntarily made, under circumstances not requiring a *Miranda* warning, subsequent to a technical *Miranda* violation. *Medeiros*, 889 F.2d at 823-24. Rather, the relevant inquiry is whether the suspect "made his second statement voluntarily." *Id.* at 824; *see Elstad*, 470 U.S. at 318 ("[T]here is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made.").

**[5]** Here, the Washington Court of Appeals affirmed the trial court's conclusion that the March 25, 1998, statements, though obtained in violation of *Miranda*, were voluntary.[3] In light of its conclusion that the March 26, 1998, phone conversation was not a custodial interrogation (and therefore did not require a *Miranda* warning), it concluded that under *Elstad*'s reasoning, there was no reason to treat the March 26 statements as tainted.

Saleh seemingly does not challenge the state courts' determination that his March 3, 1998, and March 25, 1998, statements were voluntary. Nor does he contest that he initiated the March 26, 1998, phone call and that he was free at all times to end it.[4] Although this case is distinguishable from

---

[3]The trial court also explicitly noted that the March 3, 1998, statements, though not obtained in compliance with *Miranda*, were not the product of coercion.

[4]Saleh's reliance upon *Missouri v. Seibert*, 542 U.S. 600 (2004) (plurality opinion), is misplaced in light of his initiation of the March 26 phone call. In *Seibert*, the Court distinguished *Elstad* to address what a majority saw as a deliberate, two-step interrogation designed to undermine *Miranda*'s protections. 542 U.S. at 609 ("The technique of interrogating in suc-

*Elstad* inasmuch as there was no intervening *Miranda* warning between the March 25 interrogation and the March 26 phone call, because the latter was not a custodial interrogation, no such warning was required. *See Medeiros*, 889 F.2d 819 (holding that "the fundamental constitutional principles" underlying *Elstad* require its application even where there is no intervening *Miranda* warning).

**[6]** Accordingly, *Elstad*'s "relevant inquiry . . . whether, in fact, the second statement was also voluntarily made" must be answered in the affirmative. We therefore conclude that the Washington Court of Appeals's decision was correct; in any event, we cannot conclude that it was contrary to clearly established Supreme Court precedent.

### III

For the foregoing reasons, the decision of the district court is **AFFIRMED**.[5]

---

cessive, unwarned and warned phases raises a new challenge to *Miranda*.") (Souter, J., concurring); *id.* at 620 ("The police used a two-step questioning technique based on a deliberate violation of *Miranda*.") (Kennedy, J., concurring in the judgment). Here, the conversation that was admitted was not part of a deliberate police interrogation, but a phone call freely placed by Saleh. We also note that in *Seibert*, Justice Kennedy (who provided the decisive fifth vote) concurred separately in part to note that in his view "*Elstad* was correct in its reasoning and its result." *Seibert*, 542 U.S. at 620; *see also United States v. Williams*, 435 F.3d 1148, 1161 (9th Cir. 2006) (holding that *Elstad* remains applicable after *Seibert* to circumstances in which an interrogator does not deliberately withhold an initial *Miranda* warning).

[5]Saleh's motion to enlarge the record on appeal is denied as moot.

BERZON, Circuit Judge, concurring:

I concur in full in the opinion. If, however, the "cat out of the bag" contention resolved in section II.B were not foreclosed by *Medeiros v. Shimoda*, 889 F.2d 819 (9th Cir. 1989), I would adopt the trenchant analysis of Judge Norris in dissent in that case. Here, as in *Medeiros*, no valid *Miranda* warnings were given after the unwarned inculpatory statement was first made. Judge Norris would have held that in those circumstances, any later statement is not made voluntarily. *See Medeiros*, 889 F.2d at 828, 832 (Norris, J., dissenting) (noting that in *Oregon v. Elstad*, 470 U.S. 298 (1985), "the presumption that the coercive effect of Elstad's first confession undermined the voluntariness of his second confession was rebutted by the administration and waiver of *Miranda* warnings prior to the second," and expressing the view that absent such intervening warnings (or some other "tangible intervening event"), *Elstad* and *United States v. Bayer*, 331 U.S. 532 (1947), "teach that the coercive effect of the initial confession *is* sufficient to require suppression of a later confession"). Were I free to do so, I would come to the same conclusion.