RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

             *Plaintiff-Appellee,*

    *v.*

No. 08-2183

ISAIAS QUESADA,

             *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-20222-001—David M. Lawson, District Judge.

Decided and Filed: June 15, 2010

Before: DAUGHTREY, GILMAN, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** John Minock, CRAMER & MINOCK, PLC, Ann Arbor, Michigan, for Appellant. Leonid Feller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Isaias Quesada pled guilty to a number of criminal charges revolving around a drug-distribution conspiracy. He was sentenced to 240 months of imprisonment. Quesada now appeals his conviction and sentence, arguing that the government breached the plea agreement by using Quesada's proffer statement to prove the applicability of certain sentencing enhancements. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

## I.  BACKGROUND

In April 2007, Quesada was charged with one count of conspiracy to distribute controlled substances (count one), one count of distribution of controlled substances (count ten), one count of being a felon in possession of ammunition (count fifteen), and one count of possession of controlled substances with the intent to distribute the same (count sixteen). He was one of nine defendants charged in the indictment.  And like his codefendants, Quesada entered into plea negotiations with the government.

As a part of these negotiations, Quesada agreed to meet with the government for a proffer.  The government set forth the terms of the proffer in a letter to Quesada's attorney. This letter provided that Quesada was "to make a complete and truthful statement of his knowledge of (and role in) the matters under investigation, and to fully and truthfully answer all questions."  The letter further stated that, "[e]xcept as otherwise specified in this letter, no statement made by [Quesada] during this proffer discussion will be offered against [Quesada] in the government's case-in-chief in any criminal prosecution of [Quesada] for the matters currently under investigation."  One permissible use of the proffer by the government, however, was "to rebut any evidence offered by [Quesada] that is inconsistent with the statements made during this discussion."  Quesada provided a proffer to the government under the terms of the letter, but the parties were unable to reach a plea agreement at that time.

The court set Quesada's case for trial on January 8, 2008.  On that date, Quesada pled guilty to counts ten, fifteen, and sixteen of the indictment without the benefit of a plea agreement.  The court warned Quesada that, because there was no plea agreement, "[t]he Government is promising nothing" and "the sentencing is up to [the court] in the case." Quesada acknowledged this state of affairs and further testified that he had not been promised or assured anything in exchange for his plea of guilty.  The court then accepted Quesada's pleas of guilty on counts ten, fifteen, and sixteen of the indictment.  A trial on the sole remaining count—conspiracy to distribute controlled substances (count one)—was postponed.

In March 2008, Quesada pled guilty to count one of the indictment, this time with a written plea agreement.  The plea agreement included a provision stating that the

agreement superseded all other understandings between the parties and that no prior oral or written promises were binding except as explicitly incorporated into the agreement. No mention of the proffer letter was made in the agreement, nor were its terms incorporated therein.

In exchange for Quesada's plea of guilty, the government agreed to withdraw its notice to enhance his sentence pursuant to 21 U.S.C. § 851, which would have had the effect of increasing the mandatory minimum sentence that Quesada was facing to 240 months of imprisonment in light of his prior felony drug conviction. *See* 21 U.S.C. § 841(b)(1)(A). The withdrawal of the § 851 notice reduced Quesada's mandatory minimum sentence to 120 months of imprisonment. *See* 21 U.S.C. § 841(b)(1)(A).

During his plea hearing on count one, Quesada testified that he had not been offered anything other than the terms set forth in the plea agreement in exchange for his plea of guilty. The court further asked: "Has anyone promised you anything else about sentencing in this case?" Quesada responded: "No." The court then accepted Quesada's plea of guilty on count one of the indictment.

Before sentencing, Quesada objected to his Presentence Report (PSR), arguing that the Probation Office improperly applied sentencing enhancements for his possession of a dangerous weapon, for his being the organizer or leader of a criminal activity involving five or more persons, and for his use of minors to commit the offense. The government responded that these enhancements were appropriate and, because Quesada's objections included factual statements contradicting those made during his earlier proffer, the government would be using his proffer statement to establish the facts underlying the enhancements. Quesada replied that his objections were intended to hold the government to its burden of proof and were not intended to be affirmative factual representations. Based on this argument, Quesada contended that the information obtained from his proffer could not be used to prove the sentencing enhancements.

The district court ruled against Quesada, concluding that his objections to the PSR opened the door to allow the government to introduce his proffer statement as evidence at sentencing. In addition, the court noted that Quesada's proffer "effectively summarizes

information that came from co-defendants in the case." The court then concluded that this evidence proved the propriety of the sentencing enhancements listed in Quesada's PSR.

After determining that the appropriate criminal history category for Quesada was III, the court calculated Quesada's U.S. Sentencing Guidelines (U.S.S.G.) range as 235 to 293 months of imprisonment. The court then accepted the plea agreement and granted the government's motion to withdraw its 21 U.S.C. § 851 notice. Finally, the court sentenced Quesada to 240 months of imprisonment on counts one, ten, and sixteen of the indictment, and a concurrent 120 months of imprisonment on count fifteen. Quesada now appeals his conviction and sentence.

## II. ANALYSIS

"The construction of a plea agreement presents a question of law," and is thus subject to de novo review. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) (citation and internal quotation marks omitted). Similarly, "whether the government's conduct violated the agreement is a question of law that we review de novo." *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000). The district court's findings of fact, on the other hand, such as whether there was an agreement and the substance of that agreement, are reviewed under the clear-error standard. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

Quesada argues on appeal that the district court used statements made by him during his proffer to increase his sentence, and that this violated the terms of the proffer letter as well as U.S.S.G. § 1B1.8. Section 1B1.8 provides that the government may not use the statements made by a defendant during his or her proffer to determine the defendant's applicable Guidelines range where the government previously agreed "that self-incriminating information provided pursuant to the agreement w[ould] not be used against the defendant . . . except to the extent provided in the agreement." Because of this alleged error, Quesada contends that the government breached the plea agreement. He therefore asks us to remand the case to the district court with instructions to give him the option of either withdrawing his guilty pleas or being resentenced without the use of the proffer.

In response, the government asserts that the plea agreement superseded the proffer letter and, because the terms of the proffer letter were not included in the plea agreement,

such terms are no longer binding on the parties. And even if this were not the case, the government contends that Quesada contradicted various statements made during his proffer in his objections to the PSR, thereby permitting the introduction of these statements under the terms of the proffer letter. The government also argues that the district court acted within its authority under 18 U.S.C. § 3661 in considering the proffer, and that any error was harmless because the information contained in the proffer was also provided in the statements of Quesada's codefendants. Section 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Finally, the government notes that the only relief available to Quesada if he is victorious on appeal is a resentencing, not the withdrawal of his pleas of guilty.

Quesada responds by arguing that the purported breach of the proffer letter constitutes a breach of the plea agreement. But he fails to acknowledge the integration clause contained in the plea agreement, which provides:

> This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. It supersedes all other promises, representations, understandings, and agreements between the parties concerning the subject matter of this plea agreement that are made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

This court has previously held that "[a]n integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000). We discern no reason why this rule should not also apply to prior written proffer agreements. Indeed, several of our sister circuits have held that a plea agreement that does not incorporate the terms of a proffer agreement supersedes the proffer agreement and renders its terms void. *See United States v. Santisteban*, 501 F.3d 873, 880 (8th Cir. 2007) ("Once the plea agreement was signed, the terms of that agreement superseded the terms of the preliminary proffer letters concerning the use of [the defendant's] statements."); *United States v. Davis*, 393 F.3d 540, 546 (5th Cir.

2004) ("Thus, where [the defendant's] plea agreement plainly provided that it superseded any other agreements reached between the parties and where [the defendant] specifically represented to the trial court . . . that there were no other promises made to him other than those contained in the plea agreement, it follows that [the defendant's] plea agreement superseded the proffer letter."); *United States v. Thornton*, 197 F.3d 241, 253 (7th Cir. 1999) (describing "proffer letters, which memorialize the framework under which the codefendants agreed to talk in the first place," as being "of scant relevance at trial when a subsequent, superseding plea agreement has been reached"); *United States v. Fagge*, 101 F.3d 232, 234 (2d Cir. 1996) (concluding that "[t]he plea agreement superseded the proffer agreement").

The reasoning of our sister circuits is persuasive. We therefore hold that Quesada's plea agreement rendered the terms of the earlier proffer letter no longer binding on the parties. And because the government made no promises concerning the use of Quesada's proffer in the plea agreement, Quesada's claim that the government breached the plea agreement is without merit. This leaves us with no need to consider the government's alternative arguments in support of the district court's consideration of Quesada's proffer statement during sentencing.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.