NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2013
Decided November 4, 2013

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-2579

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 4:02-CR-40053-001-GPM |
| DONALD LEE WEIDENBURNER, *Defendant-Appellant.* | G. Patrick Murphy, *Judge.* |

## O R D E R

A jury found Donald Weidenburner guilty of conspiring to manufacture and distribute methamphetamine, *see* 21 U.S.C. §§ 846, 841(a)(1), and the district court sentenced him to 360 months' imprisonment. Weidenburner filed a notice of appeal, but his appointed lawyer asserts that the possible appellate claims are frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). Weidenburner opposes counsel's motion. *See* CIR. R. 51(b). We confine our review to the potential issues identified in counsel's facially adequate brief and Weidenburner's response. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).

Greg Hanisch and Justin Mitchell, both Illinois State Police agents assigned to the Southern Illinois Drug Task Force, received information in late 2001 that methamphetamine was being manufactured at a residence in Gallatin County, which borders Indiana and Kentucky. They executed a search warrant at the home and discovered large amounts of methamphetamine, raw materials, firearms, and lab and surveillance equipment. They also located Weidenburner's van on the property as well as his bank identification card and a notebook outlining his shares of several methamphetamine batches.

On the same day that the agents executed the warrant, they also learned that Weidenburner and his girlfriend, Michelle Barth, had been arrested in Indiana for attempted dealing in methamphetamine. Agent Hanisch had enlisted Weidenburner's cooperation years earlier during another methamphetamine investigation and decided to seek his cooperation again. He and Agent Mitchell spoke with Weidenburner a few days later at the Spencer County Jail in Rockport, Indiana, where Weidenburner was in custody on the Indiana drug charge. The agents had not sought permission from Weidenburner's court-appointed attorney, even though Weidenburner had refused to speak with Indiana authorities without an attorney present. Neither did the agents give *Miranda* warnings before the interview. After being told that any cooperation would be made known to state and federal prosecutors in Illinois, Weidenburner disclosed details about his and his cohorts' manufacture and distribution of methamphetamine in both Illinois and Indiana. Before leaving the jail, the agents invited Weidenburner to contact them if he made bail and wished to cooperate further.

Weidenburner was released about a month after that interview, and twelve days later he contacted the agents. He arranged a meeting at his hotel room and gave the agents a written statement that he had dictated to Barth (repeating much of what he said at the jail). Over the next three months Weidenburner secretly recorded phone calls and other conversations with his coconspirators in Illinois, and he also allowed Agents Hanisch and Mitchell to record interviews with him in March and April 2002. Before the first of these interviews, Weidenburner signed a cooperation agreement admonishing, among other provisions, that the agents would disclose Weidenburner's cooperation to prosecutors but could not make "promises or predictions regarding the likely disposition of any criminal charges."

Weidenburner's work as an informant ended in June 2002 after he again was arrested in Indiana on drug charges. In September he was released on bail and about a

month later a grand jury in the Southern District of Illinois indicted him in this case. Before he could be arrested, however, Weidenburner fled Illinois along with Barth (who would be indicted later). The pair left Barth's mother a letter saying they would fight federal prosecution but could not do so "from behind bars." Barth surrendered in 2004, but Weidenburner avoided capture until deputy marshals acting on a tip arrested him in Kentucky in late 2010. He was carrying a debit card and a Kentucky driver's license in another name.

At trial the government introduced the statement Weidenburner had dictated to Barth, and Agent Hanisch recounted Weidenburner's admissions during the recorded interviews in March and April 2002. (The government did not offer testimony about Weidenburner's jailhouse confession in Rockport, Indiana, because, prosecutors conceded, that confession was obtained in violation of the Fifth Amendment. *See Miranda v. Arizona*, 384 U.S. 436 (1966); *Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981).) The government also called several cooperating codefendants, including Barth. Some described cooking methamphetamine with Weidenburner or allowing him to operate a lab on their property, and others explained how he recruited them to obtain raw materials or to sell the finished product. Several police officers also described evidence gathered from methamphetamine labs tied to Weidenburner.

In her *Anders* submission counsel first evaluates whether Weidenburner could argue that the district court erred in rejecting his claim that the 8 ½-year interval between his indictment in 2002 and capture in 2010 violated his Sixth Amendment right to a speedy trial. That claim would be preposterous because Weidenburner had fled Illinois and was living in Kentucky under various aliases the entire time. *See United States v. Wanigasinghe*, 545 F.3d 595, 598–99 (7th Cir. 2008) (explaining that there was "absolutely no hint" that government had delayed "its case to gain a tactical advantage" over defendant who fled country to avoid prosecution); *United States v. Arceo*, 535 F.3d 679, 684–86 (7th Cir. 2008) (explaining that 6 ½-year delay between indictment and arrest was attributable mostly to defendant's flight to avoid prosecution and use of aliases to avoid detection); *United States v. Mitchell*, 957 F.2d 465, 469 (7th Cir. 1992) (noting that defendant's flight to evade prosecution was "root cause" of delay). In his motion Weidenburner alleged that unnamed Illinois State Police officers had suggested that he "make himself scarce" to avoid retaliation from coconspirators who would soon be indicted, but even if that statement is true it does not explain why Weidenburner also was hiding *from the police*. Agent Hanisch testified at trial that he had told Weidenburner that *his* indictment was imminent, and Barth, the defendant's girlfriend,

testified that she and Weidenburner had fled to avoid prosecution. The letter they left for Barth's mother proves as much.

Appellate counsel also evaluates whether Weidenburner could claim that a second speedy-trial motion, this one statutory, should have been granted. A defendant must be tried within 70 nonexcludable days from the latter of his indictment or first appearance in the charging district. 18 U.S.C. § 3161(c)(1), (h). Weidenburner moved to dismiss the indictment in October 2011, just over eight months after his initial appearance in the Southern District of Illinois. His trial lawyer did not dispute the district court's conclusion in deciding the motion that—given the amount of time explicitly excluded under the statute because of pretrial motions, *see id.* § 3161(h)(1)(D), and continuances sought by Weidenburner, *see id.* § 3161(h)(7)(A)—only 35 nonexcludable days had elapsed. (Weidenburner never renewed his motion to dismiss, so only the period before its filing is relevant. *See United States v. Gates*, 709 F.3d 58, 68 (1st Cir. 2013); *United States v. Mathis*, 96 F.3d 1577, 1579 (11th Cir. 1996); *United States v. Mayes*, 917 F.2d 457, 460 (10th Cir. 1990).) Instead, trial counsel argued that, notwithstanding the statutory exclusions, a continuous period of 65 days should have counted against the 70-day clock because Weidenburner purportedly had no contact with his former lawyer during that period. The only authority Weidenburner cited for that proposition is *Vermont v. Brillon*, which explains that, under the Sixth Amendment (not the Speedy Trial Act), delay attributable to "systemic" dysfunction in a public-defender system might be charged to the prosecution. 129 S. Ct. 1283, 1292–93 (2009). There was no suggestion, though, of inaction by Weidenburner's former appointed counsel, let alone appointed lawyers system-wide. Weidenburner's former attorney had been granted a continuance shortly after his appointment to familiarize himself with the case, *see* 18 U.S.C. § 3161(h)(7)(B)(iv), and during the 65-day period when Weidenburner says he was ignored, the lawyer in fact moved dismiss the indictment on the ground that Weidenburner's constitutional right to a speedy trial had been violated. Thus, an appellate claim premised on the Speedy Trial Act would be frivolous.

Counsel next discusses whether Weidenburner might argue that his statements to Agents Hanisch and Mitchell were obtained in violation of the Fifth Amendment and should have been suppressed. The district court understood Weidenburner to argue that all his confessions should be suppressed because the initial, jailhouse interrogation was not preceded by *Miranda* warnings and the later, noncustodial interviews were induced by false promises from the agents that he would not be prosecuted in Illinois if he helped their investigation. The government conceded that the confession obtained at the Spencer County Jail was inadmissable because Weidenburner was subjected to custodial interrogation without *Miranda* warnings. The government disputed, however,

that false assurances of nonprosecution had been given Weidenburner, and after an evidentiary hearing the district court concluded that Hanisch and Mitchell had said only that they would make Weidenburner's cooperation known to prosecuting authorities. We agree with counsel that it would be frivolous to argue that such a promise rendered Weidenburner's confessions involuntary. *See United States v. Villalpando*, 588 F.3d 1124, 1128–30 (7th Cir. 2009); *United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007).

Trial counsel might have tried to distinguish this case from *Oregon v. Elstad*, 470 U.S. 298 (1985), and *Missouri v. Seibert*, 542 U.S. 600 (2004). In *Elstad* the Court held that, though an initial confession obtained in violation of *Miranda* must be suppressed, the admissibility of subsequent, warned confessions turns solely on whether they were knowing and voluntary. 470 U.S. at 309–10. And in *Seibert* the Court clarified that the "poisonous fruits" doctrine does not apply to violations of *Miranda*. 542 U.S. at 612 n.4. In both of those cases, however, the police officers who conducted a custodial interrogation without administering *Miranda* warnings gave those warnings before questioning the defendant again after his release. Weidenburner's later confessions were not preceded by *Miranda* warnings, and trial counsel might have argued that these confessions should have been suppressed as the delayed product of Weidenburner's initial, unwarned confession. *See, e.g.*, *Tawfeq Saleh v. Fleming*, 512 F.3d 548, 553 (9th Cir. 2008) (Berzon, J., concurring); *Collazo v. Estelle*, 940 F.2d 411, 423 (9th Cir. 1991); *United States v. Gomez*, 927 F.2d 1530, 1533, 1538–39 (11th Cir. 1991); *Medeiros v. Shimoda*, 889 F.2d 819, 826–31 (9th Cir. 1989) (Norris, J., dissenting). But whether this theory might have been plausible, Weidenburner waived it by not raising it in his motion to suppress. *See* FED. R. CRIM. P. 12(e); *United States v. Clark*, 657 F.3d 578, 582–83 (7th Cir. 2011); *United States v. Murdock*, 491 F.3d 694, 698–99 (7th Cir. 2007).

In his Rule 51(b) response, Weidenburner takes a different route and contends that his noncustodial statements should have been suppressed as fruits of his unwarned jailhouse confession because Agents Hanisch and Mitchell also violated his *Sixth Amendment* right to counsel in obtaining that confession. *See Montejo* v. *Louisiana*, 556 U.S. 778, 786 (2009). Neither did Weidenburner raise this argument in his motion to suppress, and thus it too is waived. In any event, the Sixth Amendment is "offense specific," *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991), so if there was a violation, it concerned only the charge that was pending in Indiana when Weidenburner was questioned at the Spencer County Jail. That interrogation occurred almost twelve months before Weidenburner was indicted in federal court. Although his Sixth Amendment right to counsel had attached on the pending Indiana charge of attempted

dealing in methamphetamine, Ind. Code §§ 35-41-5-1, 35-48-4-1.1, that right had not attached for other crimes that are not the "same offense" under the test of *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Texas v. Cobb*, 532 U.S. 162, 165–66, 174 (2001) (concluding that police did not violate Sixth Amendment right to counsel by questioning suspect about murders committed during course of burglary even though suspect already had been indicted for that burglary); *United States v. Krueger*, 415 F.3d 766, 775 (7th Cir. 2005) (explaining that factual connection to charged crime is not enough to make uncharged crime the "same offense" for purposes of Sixth Amendment right to counsel). Even if Weidenburner's argument is not foreclosed because the charges were brought by separate sovereigns, *see Krueger*, 415 F.3d at 775–78 (leaving open whether dual sovereignty doctrine applies in Sixth Amendment context); *United States v. Alvarado*, 440 F.3d 191, 198 (4th Cir. 2006) (applying dual sovereignty exception in Sixth Amendment context); *United States v. Coker*, 433 F.3d 39, 44–47 (1st Cir. 2005) (same); *United States v. Mills*, 412 F.3d 325, 330 (2d Cir. 2005) (concluding that dual sovereignty doctrine does not apply in Sixth Amendment context), attempted dealing in methamphetamine and conspiracy to distribute methamphetamine are not the same offense under the *Blockburger* test. *See Pinkerton v. United States*, 328 U.S. 640, 643 (1946) (explaining that commission of substantive offense and conspiracy to commit that offense are district offenses); *United States v. Mire*, 725 F.3d 665, 678 (7th Cir. 2013) (same); *United States v. Williams*, 720 F.3d 674, 692 (8th Cir. 2013) (concluding that, under *Blockburger* test, possession of controlled substance with intent to distribute is distinct from conspiracy to commit that crime).

Counsel also considers whether Weidenburner could challenge the sufficiency of the evidence supporting his conspiracy conviction. Given the overwhelming evidence of Weidenburner's involvement in the drug conspiracy—including his confessions and the testimony of his coconspirators—we agree with counsel that it would be frivolous to argue that a rational jury could not have found him guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

As to Weidenburner's conviction, counsel last evaluates whether the defendant could argue that it was error to deny his postverdict motion for a new trial. That motion was based on the government's assertion that it could not locate copies of "proffer letters" written to the lawyers for Barth and David Duffy, Jr., two of Weidenburner's codefendants who testified against him. These letters, which the government drafted and the two codefendants acknowledged by initialing each paragraph, set the ground rules for "off the record" interviews that could lead to favorable plea agreements. Essentially prosecutors want to know what information a defendant possesses before

bargaining for his cooperation. *See United States v. Schuster*, 706 F.3d 800, 804–05 (7th Cir. 2013). The government could not locate copies of the letters sent to counsel for Barth and Duffy, but neither witness disputed their existence, and Duffy even confirmed that the letter sent to his lawyer was identical to a proffer agreement shown to him for another testifying codefendant. And Weidenburner did receive copies of the plea agreements executed by Barth and Duffy.

Weidenburner's motion for a new trial was premised on his belief that disclosure of the proffer letters was required by *Giglio v. United States*, 405 U.S. 150 (1972), or the Jencks Act, 18 U.S.C. § 3500. In light of the record, a claim of nondisclosure would be factually frivolous, but, more importantly, these letters are not *Giglio* material or Jencks Act statements. *Giglio* requires disclosure of inducements for a witnesses's testimony, 405 U.S. at 154–55; *United States v. Morris*, 498 F.3d 634, 640 (7th Cir. 2007), but the prosecutor fulfilled that obligation by producing the plea agreements, which describe the benefits Barth and Duffy would receive for cooperating, including by testifying. The proffer letters were preliminary to the resulting plea agreements, and thus *Giglio* was satisfied by disclosure of the plea agreements. *See United States v. Santisteban*, 501 F.3d 873, 880 (8th Cir. 2007) (concluding that government provided due process by disclosing plea agreements that superceded proffer agreements); *United States v. Thornton*, 197 F.3d 241, 253 (7th Cir. 1999) (explaining that proffer letters are "of scant relevance at trial when a subsequent, superseding plea agreement has been reached"); *United States v. Quesada*, 607 F.3d 1128, 1131–32 (6th Cir. 2010) (explaining that plea agreements supercede proffer agreements); *United States v. Davis*, 393 F.3d 540, 546 (5th Cir. 2004) (same).

Likewise the Jencks Act is irrelevant. The proffer letters were statements of the prosecutor who wrote them; a proffer letter is not a "factual narrative" useful for impeachment, *see Goldberg v. United States*, 425 U.S. 94, 114 (1976) (Stevens, J., concurring); *United States v. Allen*, 798 F.3d 985, 994 (7th Cir. 1986), and neither did trial counsel explain how Barth and Duffy could be said to have adopted the prosecutor's statements merely by acknowledging having read the letters, *See* 18 U.S.C. § 3500(e)(1*); United States v. McGee*, 408 F.3d 966, 973 (7th Cir. 2005).

Turning to Weidenburner's sentence, counsel considers only whether Weidenburner could argue that the term of imprisonment is unreasonable. But the term is within the calculated guidelines range and thus is presumed reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Baker*, 655 F.3d 677, 683 (7th Cir. 2011). Counsel has not identified any factor that would overcome that presumption, nor

have we. The district court took into account the sentencing factors in 18 U.S.C. § 3553(a), acknowledging that, given Weidenburner's age, the 360-month term is the practical equivalent of a life sentence but emphasizing that Weidenburner had engaged in a "lifetime of crime"and refused to take responsibility for his actions.

Weidenburner, however, contends that his prison sentence violates the Sixth Amendment because not all the facts compelling a 20-year statutory minimum were found by the jury beyond a reasonable doubt. *See Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013). That minimum applied because the conspiracy involved at least 500 grams of a mixture containing methamphetamine and because Weidenburner already had a conviction for a felony drug offense. *See* 21 U.S.C. §§ 841(b)(1)(A)(viii), 851. But the jury, in fact, made a special finding that the conspiracy involved 500 grams or more of a mixture containing methamphetamine, *cf. United States v. Claybrooks*, 729 F.3d 699, 708 (7th Cir. 2013), and *Alleyne* does not change the longstanding rule that the fact of a prior conviction need not be alleged in the indictment or proved to a jury beyond a reasonable doubt, *see Alleyne*, 133 S. Ct. at 2160 n.1; *Almendarez–Torres v. United States*, 523 U.S. 224, 239 (1998).

Counsel and Weidenburner could have, but did not, consider the relevance of *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013), which holds that using a version of the guidelines promulgated after the defendant committed his crime violates the Ex Post Facto Clause if the newer version yields a higher imprisonment range. Weidenburner's conspiracy ended in 2002, yet the district court applied the 2011 version of the guidelines. Under the newer version, two of Weidenburner's convictions (one for possession with intent to distribute methamphetamine and another for money laundering) counted separately because the sentences did not result from offenses contained in the same charging instrument and were imposed on different days. *See* U.S.S.G. § 4A1.2(a)(2) (2011). Under the 2002 version of § 4A1.2(a)(2), however, those offenses might have been deemed related, and thus counted together instead of separately, because they arguably were part of a "common scheme or plan." *See* U.S.S.G. § 4A1.2 cmt. n.3 (2002); *United States v. Brown*, 209 F.3d 1020, 1023–24 (7th Cir. 2000). Counting the convictions separately resulted in a criminal history category of III rather than II. But given Weidenburner's offense level, his guidelines range would remain 360 months to life, and thus the district court did not run afoul of *Peugh*. *See United States v. Stokes*, 726 F.3d 880, 898–99 (7th Cir. 2013).

Counsel last considers arguing that Weidenburner's trial lawyers provided ineffective assistance. Yet appellate counsel does not identify any shortcoming on which

to premise a claim of ineffective assistance. Moreover, counsel is correct that claims of ineffective assistance are best raised in a collateral attack where the record can be developed. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Harris*, 394 F.3d 543, 557–58 (7th Cir. 2005).

We **GRANT** counsel's motion to withdraw and **DISMISS** the appeal.